IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RUBEN GONZALEZ, | ) | 8:12CV10 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Ruben Gonzalez, brings this suit to challenge the Social Security Commissioner's final administrative decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f.[1] For the reasons discussed below, the Commissioner's decision will be affirmed.

## I. Procedural Background

Plaintiff, a 59-year-old with an 11th grade education and work experience as a general laborer and production worker, claims he has been disabled since August 27, 2007, primarily due to depression.[2] His applications for DIB and SSI were denied initially on October 18, 2007, with the Commissioner explaining:

---

[1] Sections 205(g) and 1631(c)(3) of the Act, 42 U.S.C. §§ 405(g), 1383(c)(3), provide for judicial review of the Commissioner's final administrative decisions under Titles II and XVI.

[2] In applications filed on August 14, 2007, Plaintiff claimed a disability onset date of November 18, 2003 (Transcript ("Tr.") (CM/ECF filing 12), 225, 230). During an administrative hearing on November 19, 2009, the claimed onset date was amended to August 22, 2007 (Tr. 32, 100-101).

You said that you are disabled due to depression, anxiety, sleep problems, and throat problems. In order to qualify for disability benefits, the evidence must show that your overall conditions prevented you from performing all types of work available in the national economy for a period of at least 12 continuous months. The evidence shows that you have received some treatment for your conditions and that currently you are experiencing some limitations in your daily activities. However, your overall condition is not determined to be of disabling severity. It is recommended that you avoid heavy/strenuous activities; avoid prolonged exposure to extreme temperatures; and avoid work with dangerous machinery or in unprotected heights. In regards to your depression and anxiety, you may unable to do more complex tasks but the evidence indicates you are capable of completing more simple, routine tasks. Therefore, we have determined that you are capable of doing your past work as an assembler of circuit boards as the job is described in the national economy. Accordingly, you canuot be found eligible for disability benefits.

(Tr. 130)  The applications were also denied on reconsideration, on January 16, 2008, for essentially the same reasons (Tr. 139).  Following these denials, Plaintiff filed a request for an administrative hearing (Tr. 150).

Ronald D. Lahners, an administrative law judge ("ALJ"), held hearings in Omaha, Nebraska, on November 19, 2009 (Tr. 96-121), and February 24, 2010 (Tr. 26-95).[3] The ALJ issued a unfavorable decision on April 28, 2010, concluding that Plaintiff is not disabled because he is capable of performing his past relevant work.[4]

---

[3] The hearing was continued from November 19, 2009, when the ALJ, acting on the recommendation of a medical expert, Gary Horner, Ph.D., decided to order a consultative neuropsychological examination of Plaintiff to test for possible dementia (Tr. 117-120).

[4] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

Evaluating Plaintiff's claim using the 5-step sequential analysis prescribed by Social Security regulations,[5] Judge Lahners made the following findings:

> 1. The claimant met the insured status requirements of the Social Security Act through December 31,2008.

---

[5] The Eighth Circuit has described the procedure as follows:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the [residual functional capacity ('RFC')] to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (footnote omitted). If, as in the present case, the 5-step analysis results in a finding of disability but there is evidence of alcoholism or drug addiction, then an additional 2-step analysis must be undertaken by the ALJ:

> First, the ALJ should determine which of the claimant's physical and mental limitations would remain if the claimant refrained from drug or alcohol use. Then, the ALJ must determine whether the claimant's remaining limitations would be disabling. If the claimant's remaining limitations would not be disabling, the claimant's alcoholism or drug addiction is a contributing factor material to a determination of disability and benefits will be denied. If the claimant would still be considered disabled due to his or her remaining limitations, the claimant is disabled and entitled to benefits.

*Rehder v. Apfel*, 205 F.3d 1056, 1059-60 (8th Cir. 2000) (citations omitted).

2. The claimant has not engaged in substantial gainful activity since August 22, 2007, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: depression and a substance abuse disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant's impairments, including the substance use disorders, meet sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).[6]

---

[6] The ALJ found the "paragraph A" criteria for listing 12.04 ("affective disorders") were satisfied because Plaintiff's depressive syndrome is characterized by "symptoms such as difficulty concentrating or thinking; hallucinations[;] appetite disturbance[;] decreased energy; and sleep disturbance." (Tr. 15) The ALJ found the "paragraph B" criteria were satisfied because Plaintiff has marked restriction of activities of daily living; has marked difficulties in maintaining social functioning; has marked difficulties in maintaining concentration, persistence, or pace; and "has experienced one to two episodes of decompensation." (Tr. 15) The required level of severity for listing 12.09 ("substance addiction disorders") is also met when the requirements of listing 12.04 are satisfied. *See* 20 C.F.R. pt. 404, subpt. P., App. 1 § 12.09B. The ALJ explained these findings as follows:

> After careful consideration of all the evidence, the undersigned finds that the claimant is credible concerning his alleged symptoms and limitations. The symptoms described above are consistent with the consultative examination of Amy Corey, Ph.D., who examined the claimant on October 4, 2007 (Exhibit 4F). It [*sic*] is also consistent with the testimony of Beverly Doyle, Ph.D., who testified that the claimant would have a hard time to do competing work. These symptoms are also consistent with the testimony of the medical expert who testified that regular substance abuse would cause a problem at work and would complicate other mental impairments and effectiveness of his medications. Based on the record as a whole, the undersigned finds that the claimant's substance abuse meets all the symptoms and severity requirements of listing 12.09 and 12.04.

(Tr. 15)

. . .

5. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

. . .

6. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).[7]

. . .

7. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant should avoid

---

[7] The ALJ made the following specific findings regarding the severity of Plaintiff's mental condition absent continuing substance abuse:

The undersigned finds that the claimant's mental impairments has [*sic*] resulted in mild to moderate restriction of activities of daily living, moderate restriction in maintaining social functioning, and moderate deficiencies of concentration, persistence, and pace. The undersigned also finds that the record does not show that the claimant has had any episodes of extended decompensation . . ..

. . .

In reaching this conclusion, the Administrative Law Judge considered, *inter alia*, the opinions of the state appointed medical consultants who evaluated this issue prior to the hearing, and who likewise concluded that the claimant's impairments did not have two marked or one extreme functional limitation(s).

(Tr. 16)

exposure to concentrated cold, heat, hazards, heights, and open machinery. The claimant has "moderate" limits maintaining regular attendance, performing in a schedule, being punctual, working in coordination or proximity to others without being distracted by them, maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness, responding appropriately to changes in work setting, and maintaining a consistent pace, whereby "moderate" limits would not preclude doing satisfactorily work.

. . .

8. If the claimant stopped the substance use, the claimant would be able to perform past relevant work as a general labor and production worker. This work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if he stopped the substance use (20 CFR 404.1565 and 416.965).

. . .

9. Because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(1) and 416.920(1)), the claimant's substance use disorders [*sic*] is a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 15-19)

On May 25, 2010, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Social Security Administration (Tr. 222). The Appeals Council denied Plaintiff's request for review on November 11, 2011, after finding the ALJ's decision was supported by substantial evidence (Tr. 1-2). The ALJ's decision thereupon became the final decision of the Commissioner. *See Van Vickle v. Astrue,* *539 F.3d 825, 828 (8th Cir. 2008).*

Plaintiff filed this action on January 6, 2012. He challenges the ALJ's findings regarding alcohol abuse and contends the ALJ erred in giving great weight to the opinion of a non-examining, consultative psychologist, Thomas England, M.D., while discounting or ignoring other medical opinions. Plaintiff similarly complains that a hypothetical question the ALJ posed to the vocational expert, which was consistent with the ALJ's assessment of Plaintiff's mental residual functional capacity, did not accurately reflect the severity of his impairments.

## II. Evidence

### A. Plaintiff's Medical Record

On October 1, 2007, not long after Plaintiff filed his applications for benefits, Amy Corey, Ph.D., a psychologist, completed a consultative mental examination on referral from the state Disability Determination Services (DDS) (Tr. 394-400). Plaintiff complained of ongoing depression (Tr. 396-397) and reported "recurrent episodes of deterioration when stressed in the form of anxiety symptoms, social avoidance, poor hygiene and auditory hallucinations." (Tr. 399) Plaintiff admitted to Dr. Corey that he had been a heavy drinker, but claimed he had not consumed any alcohol during the last 4 months (Tr. 395). Dr. Corey observed that Plaintiff spoke slowly and had "limited hygiene," "slightly limited" attention and concentration, below-average intelligence, "adequate" insight into his emotions, and intact recent and remote memory (Tr. 398).

Dr. Corey felt Plaintiff was restricted in terms of daily activities, would find it difficult to maintain social functioning, and had slightly impaired ability to sustain concentration and attention (Tr. 398-399). She indicated Plaintiff could understand and remember short and simple instructions, but thought he would find it difficult to carry them out due to low energy (Tr. 399). She also thought Plaintiff could relate appropriately to supervisors and coworkers, but would find it difficult to adapt to changes (Tr. 399). Dr. Corey's diagnoses included major depressive disorder, anxiety

disorder, and alcohol dependence in remission (Tr. 399). Dr. Corey assigned Plaintiff a global assessment of functioning ("GAF") score of 50[8] and remarked that Plaintiff would likely benefit from therapy and medication (Tr. 399).

Chris Milne, Ph.D., a DDS non-examining psychologist, completed a mental assessment of Plaintiff on October 15, 2007 (Tr. 401-414). Dr. Milne agreed with Dr. Corey's diagnoses (Tr. 404, 406, 409). He opined that Plaintiff's impairments would cause moderate limitations in the following functional areas: performing within a schedule, maintaining attendance, being punctual, working with others, completing a normal workweek without interruptions, working at a consistent pace, interacting appropriately with the public, maintaining socially appropriate behaviors, and responding to changes in the work setting (Tr. 415-416).

On November 14, 2007, Plaintiff presented at a community health center with complaints of depression and anxiety (Tr. 493). Plaintiff made "rare" eye contact during the examination, and had a flat affect and a depressed mood (Tr. 493). An examiner diagnosed major depressive disorder and prescribed antidepressants (Tr. 493). During a follow-up appointment on December 14, 2007, Plaintiff reported no improvement (Tr. 491). On December 20th, Plaintiff reported some improvement in his sleep (Tr. 490).

On January 14, 2008, Lee Branham, Ph.D., a second DDS psychologist, reviewed Plaintiff's medical records (Tr. 434). He affirmed Dr. Milne's October 2007 mental assessment as written (Tr. 434).

---

[8] The *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision (*DSM-IV-TR*) states that the GAF scale is used to report the clinician's opinion as to an individual's level of functioning with regard to psychological, social, and occupational functioning. *See DSM-IV-TR* 32 (4th ed. 2000). A GAF score of 41 to 50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. *See id.* at 34.

On January 31, 2008, B. Keane, M.D., a psychiatrist, completed his initial evaluation of Plaintiff (Tr. 486–89). Plaintiff made poor eye contact and was "quiet" with a depressed mood, a blunted affect, intact attention and concentration, and "fair" knowledge, judgment, and insight (Tr. 488). Dr. Keane diagnosed major depressive disorder, posttraumatic stress disorder, and dysthymia (Tr. 489). He discontinued Plaintiff's prescriptions, and prescribed a new antidepressant and an anti-psychotic medication (Tr. 489). Dr. Keane referred Plaintiff to a social worker for financial assistance because Plaintiff claimed he could not afford medications (Tr. 489).

During an appointment with Dr. Keane the following month, on February 28, 2008, Plaintiff admitted he did not get his prescriptions filled because he still had to seek financial assistance (Tr. 485). Dr. Keane remarked that Plaintiff had not made any progress toward his treatment goals (Tr. 485). He advised Plaintiff to pursue financial aid (Tr. 485).

On March 18, 2008, Plaintiff called Dr. Keane's office to explain that he ran out of medication after taking the wrong dosages (Tr. 522). Plaintiff reported trouble sleeping, mood swings, and irritability (Tr. 522).

When they met again on June 19, 2008, Plaintiff told Dr. Keane that medication made him feel worse (Tr. 484). Plaintiff claimed he had not had a drink for about one year, but he then admitted drinking one "tallboy" of beer in recent months (Tr. 483). Dr. Keane observed that Plaintiff had a brighter affect and seemed more talkative (Tr. 484). Plaintiff also had intact concentration and memory and fair insight and judgment (Tr. 484). Dr. Keane adjusted Plaintiff's medications (Tr. 484).

During their September 11, 2008 appointment, Plaintiff told Dr. Keane he ran out of one of his medications a month earlier, and stopped taking another medication three days earlier (Tr. 483). Plaintiff reported ongoing depression and anxiety (Tr. 483). Dr. Keane noted that Plaintiff had "regressed" because of medication noncompliance (Tr. 483). He instructed Plaintiff to resume medications (Tr. 483).

-9-

On December 11, 2008, Plaintiff told Dr. Keane that he didn't want to be around others (Tr. 482). He also complained about financial constraints, and Dr. Keane referred him to a medical clinic for free medications and care (Tr. 482). Dr. Keane also increased Plaintiff's prescription dosages, and ordered blood tests and a urine drug screen to investigate some abnormal findings (Tr. 482). Plaintiff did not want to proceed with testing at that time, but agreed to return in two weeks (Tr. 482).

Plaintiff missed his scheduled appointments for lab work on December 23 and December 31, 2008 (Tr. 482). During a January 14, 2009 appointment, Plaintiff did not complete the tests because he claimed he could not urinate (Tr. 482).

On January 22, 2009, Dr. Keane advised Plaintiff he would not fill out forms for him until Plaintiff completed the necessary testing (Tr. 513). Dr. Keane also advised Plaintiff that he could not bring in a urine sample from home, and would have to provide a sample at Dr. Keane's office (Tr. 513).

Testing took place on January 29, 2009 (Tr. 479). When he met with Dr. Keane that day, Plaintiff reported improved sleep but complained of continued depression (Tr. 479). He also reported missing some doses of medication (Tr. 479). Test results revealed "obvious" alcohol use (Tr. 512, 537).

During their next meeting on February 5, 2009, Dr. Keane revised Plaintiff's diagnoses to include alcohol dependence, alcohol-induced mood disorder, alcohol-induced anxiety disorder, and alcohol-induced sleep disorder (Tr. 512). Dr. Keane recommended that Plaintiff undergo alcohol-dependence treatment until he could establish and maintain sobriety (Tr. 512). He also noted that treatment of Plaintiff's alcohol dependence might improve his symptoms, provided Plaintiff could maintain sobriety (Tr. 512). Dr. Keane remarked that if Plaintiff continued drinking, he could "expect continued difficulties and progressive worsening of physical and mental health" (Tr. 512).

On February 19, 2009, Plaintiff reported improved sleep (Tr. 478). He had intact concentration, fair memory, limited insight, and fair judgment (Tr. 478). Dr. Keane noted that Plaintiff denied or rationalized his alcohol use (Tr. 478). He prescribed medication to help Plaintiff maintain sobriety (Tr. 478, 510).

Plaintiff did not show up for a March 5, 2009 appointment (Tr. 477). During a rescheduled appointment on March 19, 2009, Plaintiff informed Dr. Keane that he had not filled his newest prescription (Tr. 476). Plaintiff denied alcohol use, but then admitted having "two drinks" in the last week (Tr. 476). Plaintiff also told Dr. Keane he would not attend Alcoholics Anonymous (Tr. 476). Dr. Keane noted that Plaintiff continued to rationalize his alcohol use (Tr. 476).

During a May 7, 2009 appointment, Plaintiff told Dr. Keane that he could not afford to take most of his medications (Tr. 475). He reported drinking "one can of beer" the previous day (Tr. 475). Dr. Keane again referred Plaintiff to sources that would assist with medication expenses (Tr. 475).

Richard Kaspar, Ph.D., a third DDS psychologist, reviewed Plaintiff's medical records about three months later, on August 30, 2009 (Tr. 439). Like Dr. Branham, Dr. Kaspar affirmed Dr. Milne's October 2007 mental assessment (Tr. 439).

John Engler, Ph.D., a psychologist, completed a consultative mental examination at the request of Plaintiff's representative on November 4, 2009 (Tr. 546–51). Plaintiff told Dr. Engler that he used to drink "a lot" but now drank "a couple beers . . . about twice a week." (Tr. 548) Dr. Engler observed that Plaintiff behaved appropriately, and had intact concentration, attention, and memory (Tr. 550). Plaintiff could perform addition, but not subtraction or multiplication (Tr. 550). He could also perform abstract reasoning, but could not interpret a proverb (Tr. 550). Dr. Engler observed that Plaintiff suffered from a mood disturbance, and had below-average intellect (Tr. 550-551). Dr. Engler diagnosed major depressive disorder, anxiety disorder, and alcohol dependence in partial remission (Tr. 550).

-11-

He assigned a GAF score of 50 (Tr. 551). Dr. Engler also commented that Plaintiff appeared to have "significantly decreased his alcohol intake." (Tr. 551)

In a questionnaire completed on the same day, Dr. Engler indicated that Plaintiff was markedly limited at dealing with work stress, completing a normal workday, interacting with supervisors and coworkers, and performing within a schedule (Tr. 554-556). The questionnaire also asked Dr. Engler whether Plaintiff would "be disabled" if he "discontinue[d] the alcohol/drug abuse." (Tr. 557) Dr. Engler indicated that Plaintiff's limitations would remain disabling (Tr. 557).

On November 5, 2009, Beverly Doyle, Ph.D., a psychologist, completed an "educational evaluation" of Plaintiff at the request of his representative (Tr. 560). Dr. Doyle noted that Plaintiff did not have good hygiene, had trouble establishing eye contact, and did not elaborate when answering questions (Tr. 560). She did not think he was under the influence of drugs or alcohol (Tr. 560). Dr. Doyle determined through testing that Plaintiff performed at the fifth-grade level in reading, sentence comprehension, and spelling, and at the third-grade level in math (Tr. 560). She indicated that Plaintiff was "functionally illiterate" and would not be able to work in jobs that required "academic skills" (Tr. 560).

Plaintiff presented to A. James Fix, Ph.D., a psychologist, for a consultative mental examination at the request of the state DDS on December 22, 2009 (Tr. 600). Before Dr. Fix could begin his examination, Plaintiff started having spasms (Tr. 601). Paramedics took Plaintiff to the hospital (Tr. 561, 601).

Upon admission to the hospital, Plaintiff admitted to binge-drinking over the last few days, but denied any drug use (Tr. 561, 564). However, a urine test was positive for cocaine (Tr. 561). Plaintiff said he did drink out of his nephew's beverage which may have had cocaine in it (Tr. 80, 563). A CT scan of Plaintiff's head showed mild brain-volume loss, but did not provide an explanation for Plaintiff's seizures (Tr. 582). Plaintiff improved during the hospitalization, and did not have any more

-12-

seizures (Tr. 561). He was diagnosed with seizures secondary to alcohol withdrawal and cocaine use (Tr. 561). The hospital discharged Plaintiff on December 28th, with instructions to avoid drugs and alcohol (Tr. 561, 564).

Dr. Doyle completed a second consultative mental examination about two months later, on February 22, 2010, again at the request of Plaintiff's representative (Tr. 610). She noted that Plaintiff's most recent drug test was negative (Tr. 603, 610). Dr. Doyle administered an IQ test, which showed that Plaintiff had low-average cognitive functioning (Tr. 611). Plaintiff did well on a memory test, but scored in the third percentile during a perceptual-speed test (Tr. 611). Dr. Doyle felt that Plaintiff's slow perceptual speed meant "he would have difficulty completing tasks in a timely fashion" (Tr. 611).

### B.  Other Evidence

The record before the ALJ also included a "work evaluation" completed by an employment program specialist for WESCO Industries on October 28, 2009 (Tr. 337-340). Plaintiff performed very slowly during the evaluation (Tr. 339). The evaluator saw no evidence that Plaintiff was under the influence of either alcohol or drugs (Tr. 339).  Based on several time studies, it was concluded that it would be "very difficult" for Plaintiff to function independently in a competitive job market, and that it would be necessary to provide him with additional supervision and guidance at any work site (Tr. 339).

The record included a report of Plaintiff's yearly earnings (Tr. 255). The report showed that Plaintiff earned less than $1,000 in 1992, 1993, 1994, 1995, and 1996 (Tr. 255). Plaintiff earned between $8,000 and $16,000 each year from 1997 through 2003, but posted no earnings in 2004, 2005, and 2006 (Tr. 255).

At the February 24, 2010 hearing, Plaintiff testified he could not work because of depression, which left him confused and unmotivated (Tr. 33, 44). Plaintiff claimed

he did not use drugs (Tr. 41). He explained he tested positive for drugs during the recent hospital visit because a female acquaintance put cocaine in his drink without telling him (Tr. 42-44). Plaintiff also said he had not had anything to drink for 4 or 5 months (Tr. 46-47, 48).

Dr. Doyle also testified at the hearing (Tr. 58-76). She stated Plaintiff did not have any memory problems during testing, but worked at a very slow speed while giving his best effort (Tr. 62, 70). She gave Plaintiff an IQ test before administering other tests to determine that he was not under the influence of alcohol (Tr. 72). Dr. Doyle testified that a cerebral diffuse atrophy noted in an MRI report could be the cause of his speed problems, and that the condition would be irreversible (Tr. 67).

The ALJ then questioned Dr. Thomas England, an agency medical expert (Tr. 77-85). Dr. England testified that the medical evidence suggested Plaintiff minimized or denied his substance use (Tr. 81-82). Dr. England felt Plaintiff suffered from a depressive condition that would exist independent of substance abuse (Tr. 82). However, Dr. England also explained that Plaintiff's substance abuse probably complicated his treatment, which might explain why his depressive symptoms were not under better control (Tr. 82-83). Dr. England estimated that if Plaintiff abstained from substances, he would still have mild to moderate limitations in daily living, moderate limitations in social functioning, moderate limitations in concentration, persistence, or pace, and no episodes of decompensation (Tr. 84). With respect to episodes of decompensation, Dr. England explained that Plaintiff's only extended hospitalization in the medical record coincided with substance abuse (Tr. 84). Dr. England also testified that alcohol could be metabolized rapidly, which meant that it was difficult to test for (Tr. 88-89).

The ALJ asked a vocational expert to consider a hypothetical claimant who could perform simple, unskilled work, but who was moderately limited in the areas of maintaining attendance, performing within a schedule, working with others, maintaining socially appropriate behavior, observing basic standards of cleanliness,

responding to changes in the work setting, and maintaining a consistent pace (Tr. 90-91). After the ALJ clarified that " moderate limitation would not preclude the doing of satisfactory work" (Tr. 91), the vocational expert testified that the hypothetical claimant could perform Plaintiff's past work as a general laborer and production worker (Tr. 92).

### III. Discussion

The applicable standard of review is whether the Commissioner's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). " Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (internal quotations and citations omitted). Evidence that both supports and detracts from the Commissioner's decision should be considered, but a final administrative decision is not subject to reversal by a reviewing court merely because some evidence in the record may support a different conclusion. *See id.* Questions of law, however, are reviewed de novo. *See Olson v. Apfel*, 170 F.3d 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n2 (8th Cir. 1995).

According to the Social Security Act, "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Alcoholism or drug addiction is "material" if the individual would not be found disabled if alcohol or drug use were to cease. *See* 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). The claimant has the burden to prove that alcoholism or drug addiction is not a contributing factor. *Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010).

As outlined in the "procedural background" section of this opinion, the ALJ followed the 5-step plus 2-step analytical process which is required when there is evidence of alcoholism or drug addiction. The ALJ made a preliminary finding that

Plaintiff was disabled based on a psychological examination Dr. Corey conducted in October 2007, and on testing Dr. Doyle performed in February 2010.[9]  The ALJ then found, based on assessments made by three non-examining DDS psychologists,[10] and on testimony provided by a fourth non-examining psychologist, Dr. England, that Plaintiff would not be disabled if he stopped drinking.  The ALJ explained that he did not accept Dr. Doyle's opinion that Plaintiff's test results were not affected by his alcohol abuse, that he did not find Plaintiff to be credible, and that he discounted Dr. Corey's findings because she indicated Plaintiff's mental abilities could improve with  medication and therapy:

> In considering the claimant's allegations, the undersigned carefully considered the testimony of Dr. Doyle who evaluated the claimant on two occasions. Dr. Doyle testified that she did not notice any drug or alcohol effect during testing, but the medical expert testified that the claimant's tests could be affected by the use of [*sic*] substance abuse (Exhibit 21F and 28F).

> The medical expert testified that the claimant's overall cognitive scores were low average, his achievement scores were in the borderline range, and that the claimant's motor speed at 71% could cause some limitations in a work setting. The medical expert testified the claimant's mental health would improve and his medications would be more effective in the absence of substance abuse. He noted that the claimant's history of seizures were related to alcohol withdrawal and that the record documented frequent substance abuse including one hospitalization which would not have been needed if he had abstained.

---

[9] Dr. Corey found that Plaintiff could understand and remember short and simple instructions, but would find it difficult to carry them out due low energy (Tr. 399).  Dr. Doyle agreed that Plaintiff does not experience memory problems, but she felt that he would have difficulty performing work due to his very slow perceptual speed (Tr. 62).

[10] Dr. Milne, Dr. Branhan, and Dr. Kaspar all concluded that Plaintiff's mental impairments imposed only moderate functional limitations.

The medical expert referred to the report from Dr. Keen [*sic*] who prescribed medications for urges and stated that the claimant's alcohol use induced mood and anxiety disorder. Even so, the medical expert opined, after reviewing the record, that the claimant was limited by a depressive disorder that is independent of substance use. The medical expert noted GAF scores in the range of 45-52, scores indicative of moderate to serious limitations, but pointed out this was related to substance use. The undersigned is convinced that his GAF scores would be higher if he had abstained.

In considering the entire record, the medical expert opined that if the claimant remained free of substances, he would have only mild to moderate limits in his activities of daily living, moderate social limitations, moderate concentration problems, and no episodes of extend decompensation. Based on his listening to the testimony and examination of the entire record, the undersigned is inclined to give his opinion great weight.

. . .

In considering the overall record, the undersigned finds that the claimant is not credible. Despite his denials, the record documents that the claimant drinks all of the time and to such a degree that he experiences withdrawal symptoms. The claimant's testimony at the hearing that he cannot remember many things, including doctor's appointments, conflicts with his testing which shows him having an average memory.

During her exam of the claimant, Dr. Corey opined that the claimant would benefit from a combination of antidepressant medication and individual therapy which presumes that her assessment would be higher than she suggested. The claimant does not see a counselor on a regular basis. The lack of regular therapy prior to this point tends to erode the claimant's credibility. The claimant has not worked very much which also does not support the claimant's credibility that he currently cannot work because of his medically determined impairments.

(Tr. 17-18)

-17-

The record supports the ALJ's conclusion that Plaintiff drank all of the time, even though neither Dr. Corey nor Dr. Doyle saw any evidence of this. Although Plaintiff generally denied drinking, or admitted to drinking a very limited amount, the record shows much more extensive use. During a June 2008 appointment with Dr. Keane, Plaintiff denied any alcohol use over the past year, but then claimed he had a single drink three months earlier (Tr. 484). Dr. Keane ordered drug testing in December 2008 based on abnormal test results (Tr. 482), and refused to complete forms for Plaintiff until he completed the tests as ordered (Tr. 513). When Plaintiff finally presented for testing, test results showed "obvious" alcohol use (Tr. 478, 537). Dr. Keane's treatment records show that Plaintiff denied or attempted to rationalize his ongoing alcohol use when confronted with these positive test results (Tr. 478). Although Dr. Keane prescribed medication to help Plaintiff stop drinking (Tr. 478), Plaintiff did not fill the prescription (Tr. 475, 476). In March 2009, Plaintiff told Dr. Keane, "I really don't drink," but then admitted having "two drinks" in the last week (Tr. 476). In appointments in May and November 2009, he again admitted to ongoing alcohol use, but claimed he drank only one or two beers at a time (Tr. 475, 548). Yet in December 2009, when Plaintiff was scheduled to be evaluated by Dr. Fix at the direction of the ALJ, he was hospitalized after binge-drinking and cocaine use (Tr. 561). At the hearing 2 months later, Plaintiff testified he had not had a drink for 4 or 5 months (Tr. 48).

Dr. England testified that Plaintiff's alcohol consumption would probably complicate his treatment, and could cause neurotransmitter disruption that might not stabilize for over 60 days (Tr. 82, 87). Also, the fact that alcohol could be metabolized rapidly meant that it could be difficult to detect with normal testing (Tr. 89).

Dr. England further testified that Plaintiff had a depressive condition that would exist independent of substance abuse, although substance abuse likely increased Plaintiff's symptoms and interfered with his treatment (Tr. 82). Dr. England estimated that when Plaintiff was not using alcohol he would still experience mild-to-moderate limitations in daily living, moderate limitations in social functioning, and moderate

limitations in concentration, persistence, or pace (Tr. 84). Dr. England opined that Plaintiff would not experience any extended episodes of decompensation during periods of sobriety, as Plaintiff's only hospitalization during the relevant period involved substance abuse (Tr. 84, 561). The ALJ properly found that such limitations are not severe enough to satisfy listings 12.04 and 12.09 (Tr. 16). *See* 20 C.F.R. Pt. 404, subpt. P, App. 1 §§ 12.04, 12.09.

In proceeding to determine Plaintiff's RFC, the ALJ found that if Plaintiff maintained sobriety, he would still experience moderate limitations in maintaining regular attendance, performing within a schedule, being punctual, working in coordination with others, maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness, responding to changes in work setting, and maintaining a consistent pace (Tr. 16–17). The moderate restriction in pace accounted for Plaintiff's below-average processing speed.

The ALJ gave good reasons for not believing Plaintiff's testimony. *See* 20 C.F.R. §§ 404.1529, 416.929 (evaluating the claimant's symptoms). First, Plaintiff's tendency to minimize or deny alcohol use gave the ALJ good reason to doubt his allegations. *See, e.g., Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005) (ALJ could find the claimant not credible based in part on her "inconsistent statements to medical professionals").  Second, the ALJ noted that Plaintiff testified he could not remember significant events and appointments, even though his memory appeared normal during testing (Tr. 18, 62). 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (the agency will consider "objective medical evidence" when evaluating the claimant's symptoms). Third, the ALJ observed that Plaintiff did not see a therapist regularly. *See Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "limited treatment of symptoms"). Finally, the ALJ noted that Plaintiff did not work consistently in the past, which tended to detract from his claims that he was presently unemployed because of medical problems (Tr. 18, 255). *See Frederickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ properly found the claimant not credible due in part to his "sporadic

work record reflecting relatively low earnings and multiple years with no reported earnings"). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003).

Plaintiff argues that the ALJ should have relied on Dr. Engler's consultative opinion when determining the materiality of substance abuse. Although Dr. Engler checked a box to indicate that Plaintiff would be disabled even if he discontinued alcohol abuse, this opinion was not entitled to weight because it addressed the ultimate issue of disability. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) (an opinion that the claimant is "disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."); 20 C.F.R. §§ 404.1527(d), 416.927(d) (an opinion on the ultimate issue of disability is not a medical opinion).

Finally, Plaintiff contends the ALJ posited an erroneous hypothetical to the vocational expert because "the ALJ improperly weighed the medical evidence of record and . . . the ALJ's conclusion as to Plaintiff's residual functional capacity is unsupported by substantial evidence." (Filing 19 at 15)  This contention is merely a restatement of Plaintiff's previous arguments.  "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). "The ALJ's hypothetical question included all of [Plaintiff's] limitations found to exist by the ALJ and set forth in the ALJ's description of [Plaintiff's] RFC." *Id.* Because "the ALJ's findings of [Plaintiff's] RFC are supported by substantial evidence, . . . [t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits." *Id.* (quoting *Lacroix*, 465 F.3d at 889).

### IV. Conclusion

For the reasons explained above, I find the ALJ's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

IT IS ORDERED that the decision of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).  Final judgment will be entered by separate document.

December 6, 2012.                    BY THE COURT:

                                     *Richard G. Kopf*
                                     Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.